**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 21-2375**

———————

NEIL BASTA

       Plaintiff - Appellant

v.

NOVANT HEALTH INCORPORATED; NOVANT HEALTH SOUTHERN PIEDMONT REGION, LLC; THE PRESBYTERIAN HOSPITAL, d/b/a Novant Health Huntersville Medical Center

       Defendants - Appellees

------------------------------

UNITED STATES OF AMERICA

       Amicus Supporting Appellant.

———————

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte.  Robert J. Conrad, Jr., District Judge.  (3:19−cv−00064−RJC−DSC)

———————

Argued:  October 28, 2022            Decided:  December 27, 2022

———————

Before WILKINSON and NIEMEYER, Circuit Judges, and TRAXLER, Senior Circuit Judge.

———————

Reversed and remanded by published opinion. Judge Wilkinson wrote the opinion, in which Judge Niemeyer and Senior Judge Traxler joined.

———————

**ARGUED:** David John Hommel, Jr., EISENBERG & BAUM, LLP, New York, New York, for Appellant. David E. Stevens, JOHNSTON, ALLISON & HORD, P.A., Charlotte, North Carolina, for Appellees. Noah Benjamin Bokat-Lindell, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Amicus United States. **ON BRIEF:** Andrew Rozynski, EISENBERG & BAUM, LLP, New York, New York, for Appellant. Patrick E. Kelly, JOHNSTON, ALLISON & HORD, P.A., Charlotte, North Carolina, for Appellees. Kristen Clarke, Assistant Attorney General, Tovah R. Calderon, Christopher C. Wang, Civil Rights Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Amicus United States.

───────────

2

WILKINSON, Circuit Judge:

Neil Basta, a deaf man, sought an interpreter to communicate with Novant Health Huntersville Medical Center during his wife's childbirth there. After Novant Health failed to provide him with a live interpreter or a functioning Video Remote Interpreting device, Basta filed this disability discrimination lawsuit. The district court dismissed his claim. Because the court applied an incorrect standard of law, we must reverse its judgment and remand for further proceedings. We believe that under the proper standard, the plaintiff has plausibly pled enough under the Rehabilitation Act to survive a Fed. R. Civ. P. 12(b)(6) dismissal motion.

## I.

### A.

Neil Basta sought medical care for his pregnant wife at Novant Health Huntersville Medical Center (Novant Health) from June 2, 2017 to June 4, 2017. Am. Compl. ¶ 5. Basta is a "profoundly deaf individual," with "limited proficiency in written English," whose chosen form of communication is American Sign Language (ASL). Am. Compl. ¶¶ 13–14. Because of these limitations, Basta "requires auxiliary aids and services to communicate effectively in a medical setting." Am. Compl. ¶ 14.

Mrs. Basta, who is not deaf, had experienced life-threatening complications that caused her to become unconscious during her first childbirth. Am. Compl. ¶ 32. When she was again expecting, Mr. Basta sought to act as her healthcare proxy. In that capacity, he would communicate with the hospital during Mrs. Basta's second childbirth in the event

3

that his wife could no longer advocate for herself. *See* Am. Compl. ¶¶ 30–33. Novant

Health has a section on its website entitled "Interpretive Services," which states that:

> If you or your family have special communication needs, we offer free interpreter services, which include: Foreign language interpreters for those with limited English proficiency, Sign language interpreters, Oral interpreters, TTY and other services for deaf or hard-of-hearing individuals. When you arrive at one of our Novant locations, if you or your family need assistance from an interpreter, let our staff know.

Am. Compl. ¶ 10.

Prior to June 2, 2017, Basta contacted Novant Health to request that he be provided

with a qualified ASL interpreter when the couple arrived for the birth. Am. Compl. ¶ 16.

According to the complaint, a Novant Health staffer assured him that there would be an in-

person ASL interpreter if Basta contacted the hospital when they were on their way to the

facility. Am. Compl. ¶ 17.

When Mrs. Basta went into labor, Mr. Basta contacted Novant Health to advise them

that he was bringing his wife into the hospital. Am. Compl. ¶ 18. At that time, he repeated

his request for an interpreter. *Id.* However, the staff member Mr. Basta spoke to said that

he had to wait until the time of arrival at the hospital to request an interpreter. *Id.* Upon

arriving at the hospital, Basta and his wife reiterated their requests. Am. Compl. ¶ 19.

Novant Health staff advised them that they were "working on it." *Id.*

Novant Health staff then provided Mr. Basta with a Video Remote Interpreting

device (VRI), which allows deaf people to communicate with an interpreter via streamed

video over the internet. Am. Compl. ¶ 20. Federal regulations require that VRI services

have a high-speed internet connection to deliver the high-quality images that enable deaf

4

users to see the sign language properly. 28 C.F.R. § 36.303(f). According to the complaint, this VRI device malfunctioned. It was "blurry, choppy, and did not have a clear enough picture" for Basta to communicate with a remote interpreter. Am. Compl. ¶ 20. Hospital staff then brought a second VRI device into the room. Am. Compl. ¶ 21. However, this device malfunctioned in the same manner. *Id.* Further, the hospital staff plugged the device into an electrical outlet away from his wife's hospital bed, which required Basta to leave his wife's bedside to use it. *Id.*

After the second VRI device malfunctioned, Novant Health did not provide a live in-person interpreter or any other auxiliary devices for Basta for the rest of the stay. Am. Compl. ¶ 22. He made repeated requests for interpreters during this time, but none were provided. Am. Compl. ¶ 26. Instead, Novant Health required Basta to communicate with doctors and staff via lip-reading, a method of communication which Basta is unable to fully understand. *See* Am. Compl. ¶ 2. Basta claims he was thus unable to comprehend what was happening throughout the delivery process and was unable to ask questions to hospital staff. Am. Compl. ¶ 23.

## B.

After his stay at Novant Health, Basta filed the instant lawsuit, alleging violations of (1) Section 504 of the Rehabilitation Act (RA), 29 U.S.C. § 794, (2) Section 1557 of the Patient Protection and Affordable Care Act (ACA), 42 U.S.C. § 18116, and (3) Title III of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12181. He sought declaratory and injunctive relief under the ADA and compensatory damages under the RA and the ACA. Novant Health filed a motion to dismiss pursuant to Fed. R. Civ. Pro. 12(b)(1) and 12(b)(6),

contending that Basta (1) lacked standing for injunctive relief under the ADA, and (2) failed to state a claim under both the RA and the ACA. The case was initially assigned to a magistrate judge, who advised that Novant's motion should be granted in its entirety. Basta then objected to the magistrate's recommendation as to the RA and ACA claims, arguing that he sufficiently pled a *prima facie* violation of these statutes. However, he conceded that he lacked standing for injunctive relief under Title III of the ADA. *See* Joint App'x (J.A.) 53.

The district court adopted the magistrate's recommendation and dismissed Basta's complaint. *Basta v. Novant Health, Inc.*, No. 3:19-cv-64-RJC-DSC, 2021 WL 5326367 (W.D.N.C. Nov. 16, 2021). It first dismissed the ADA claim, adopting the magistrate's reasoning that Basta lacked standing for injunctive relief. *Id.* at *2. As for the RA claim for compensatory damages, the district court focused on the narrow issue of whether Basta plausibly pled that Novant Health "'intentionally discriminated'" against him. *Id.* at *3 (quoting *Pandazides v. Va. Bd. of Educ.*, 13 F.3d 823, 830 n.9 (4th Cir. 1994)). Noting a lack of precedent from this court regarding the standard for intentional discrimination, the district court defined it as one of "deliberate indifference," which occurs when "'the defendant knew that harm to a federally protected right was substantially likely and . . . failed to act on that likelihood.'" *Id.* (quoting *Liese v. Indian River Cty. Hosp. Dist.*, 701 F.3d 334, 344 (11th Cir. 2012)).

The court found that "[f]or an entity like Novant, deliberate indifference cannot be shown by failing to provide ASL-fluent interpreters alone…[n]or can [it] be shown when, through no fault of its own, one of its electronic devices malfunctions." *Id.* Instead, Basta

6

had to have alleged "systemic and pervasive problems, rather than an isolated incident" related to malfunctioning VRI devices to plausibly plead a claim under the RA. *Id.* Since Basta alleged only an isolated occurrence of malfunctioning VRI devices relating to his single three-day stay at Novant Health, the court found he failed to make out a *prima facie* claim entitling him to compensatory damages under the RA. *Id.* at *4.

Lastly, the district court dismissed Basta's compensatory damages claims under Section 1557 of the ACA on the grounds that "the ACA claim fails for the same reason as the RA claim." *Id.* Since Basta had not alleged facts showing that Novant intentionally discriminated against him under a deliberate indifference standard, necessary for the ACA claim to survive, the court dismissed that claim as well. *Id.*

## II.

Basta timely appealed the district court's order. He argues that his complaint plausibly alleged claims under Section 504 of the RA and Section 1557 of the ACA. According to Basta, intentional discrimination via deliberate indifference can be proven by the fact that Novant provided only two malfunctioning VRI devices on the first day of a three-day stay and failed to provide any other interpretive services or auxiliary aids despite repeated requests. He argues that he was thus entitled to proceed to discovery on these claims.

We hold that Basta plausibly pled a claim of compensatory damages under the RA. Basta waived his appeal rights for the ADA injunctive relief claim by failing to object to the magistrate's recommendation, *see Wright v. Collins*, 766 F.2d 841, 845–46 (4th Cir. 1985), so we focus only on his RA and ACA claims. We agree with the district court that

7

these claims rise and fall together. Under the ACA, "an individual shall not, on the ground prohibited under…section 794 of title 29 [section 504 of the RA]; be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity[.]" 42 U.S.C. § 18116(a); *see also Francois v. Our Lady of the Lake Hosp., Inc.*, 8 F.4th 370, 378 (5th Cir. 2021) ("For disability-discrimination claims, the ACA incorporates the substantive analytical framework of the RA."); *Doe v. BlueCross BlueShield of Tenn.*, 926 F.3d 235, 239 (6th Cir. 2019) (noting that "the Affordable Care Act picks up the standard of care for showing a violation of § 504") (emphasis omitted); *Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204, 1210 (9th Cir. 2020) ("[T]o state a claim for a Section 1557 violation, [plaintiffs] must allege facts adequate to state a claim under Section 504 of the Rehabilitation Act."). Accordingly, we focus on the standard for compensatory damages under the RA, as this is a threshold determination as to whether Basta plausibly pled a claim under the ACA.

A.

Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States …shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance[.]" 29 U.S.C. § 794(a). Therefore, to establish a *prima facie* violation of the RA against a private entity which receives federal funds, a plaintiff must show that he or she is: (1) a "disabled individual" as defined in the RA; (2) "otherwise qualified" to participate in the offered activity or to enjoy its benefits; (3) excluded from such participation or enjoyment solely

8

by reason of his or her handicap; and (4) that the program administering the activity receives federal financial assistance. *See Halpern v. Wake Forest Univ. Health Sciences*, 669 F.3d 454, 461–62 (4th Cir. 2012); *see also Koon v. North Carolina*, 50 F.4th 398, 405 (4th Cir. 2022). One way to prove this third prong is by showing that a hospital failed to adequately accommodate a hearing-impaired individual by providing ineffective auxiliary aids under the RA. *Liese*, 701 F.3d at 343–44.

Novant does not deny that it receives federal funding, nor does it contest that Basta has a disability within the meaning of the RA. Moreover, Novant agrees that Basta, as a healthcare proxy for his wife, was entitled to auxiliary aids to ensure effective communication with hospital staff. *See* 28 C.F.R. §§ 35.160(a)(1)–(2). The parties agree that the only element in dispute is whether Novant failed to adequately accommodate Basta by providing him malfunctioning auxiliary aids on the first day of his three-day stay at Novant.

The general meaning of an adequate accommodation has been well-explained. In passing the RA, Congress sought to target a type of "thoughtless[] and indifferent[]" discrimination, which arises not out of "invidious animus" but rather out "of benign neglect." *Alexander v. Choate*, 469 U.S. 287, 295 (1985). Thus, recipients of federal funds must ensure that "otherwise qualified handicapped individual[s]" are "provided with meaningful access to the benefit that the grantee offers." *Id.* at 301. Pursuant to congressional delegation, *see* 29 U.S.C. § 794(a), the Department of Health and Human Services has issued regulations which further define what meaningful access requires in a hospital setting. These regulations "warrant respect" by this court. *A Helping Hand, LLC*

9

*v. Baltimore Cty.*, 515 F.3d 356, 362 (4th Cir. 2008) (internal quotations omitted); *see also Nat'l Fed. of the Blind v. Lamone*, 813 F.3d 494, 506 (4th Cir. 2016).

The regulations prohibit a recipient of federal funds from providing a disabled individual "an opportunity to participate in or benefit from the aid, benefit or service that is not equal to that offered nonhandicapped persons" or "that is not as effective as . . . the benefits or services provided to others." 45 C.F.R. § 84.52(a)(2)– (3). Although "aids, benefits and services, to be equally effective, are not required to produce the identical result or level of achievement for handicapped and nonhandicapped persons," they "must afford handicapped persons equal opportunity to obtain the same result . . . ." *Id.* § 84.4(b)(2).

Important here, a recipient of federal funds with more than fifteen employees must "provide appropriate auxiliary aids to persons with impaired sensory . . . skills, where necessary to afford such persons an equal opportunity to benefit from the service in question." *Id.* § 84.52(d)(1). These auxiliary aids may include interpreters or other services for hearing-impaired individuals. *Id.* § 84.52(d)(3). Both the statute and the regulations thus make clear that the RA focuses on "the equal opportunity to *participate* in obtaining and utilizing services" in hospital settings. *Silva v. Baptist Health S. Fla., Inc.*, 856 F.3d 824, 834 (11th Cir. 2017) (emphasis in original).

Although, as noted, Basta waived his ADA claim here, the regulations interpreting the ADA can still be helpful in understanding the RA's requirements. This court interprets the ADA and the RA in lockstep, *see Koon*, 50 F.4th at 403 n.2, and the ADA's regulations further elucidate the requirements governing auxiliary aids. ADA regulations provide that "[a] public accommodation shall furnish appropriate auxiliary aids and services where

necessary to ensure *effective communication* with individuals with disabilities." 28 C.F.R. § 36.303(c)(1) (emphasis added). Notably, regarding VRI, an entity that chooses to provide interpretive services in this manner must ensure that it meets certain performance standards. *See id.* § 36.303(f). These include "[r]eal-time, full-motion video" over a sufficiently strong wireless network "that delivers high-quality video images that do not produce lags, choppy, blurry or grainy images, or irregular pauses in communication" and "[a]dequate training to users of the technology…so that they may quickly and efficiently set up and operate the VRI," among others. *Id.*, § 36.303(f)(1)–(4). A VRI system that does not meet these standards is not "an effective method[] of making aurally delivered materials available to individuals with hearing impairments"– meaning a non-compliant VRI system is not an appropriate auxiliary aid. 42 U.S.C. § 12103(1)(A).

A plaintiff who proves a *prima facie* violation of the RA may seek the remedies available under Title VI of the Civil Rights Act, including damages. *See* 29 U.S.C. § 794a(2); *see also Pandazides*, 13 F.3d at 829–30. However, in order to receive compensatory damages, a plaintiff must prove not only that a defendant-entity failed to provide appropriate auxiliary aids, but also that it acted with an intent to discriminate. *See Pandazides*, 13 F.3d at 830–32 & n.9; *see also Koon*, 50 F.4th at 405. This standard, of course, must be more than negligence, but this court has not yet articulated the precise manner of proving discriminatory intent under the RA. The parties in this case both proceeded under a "deliberate indifference" standard, and the district court also considered it the appropriate standard. Most of our sister circuits have also found that intentional discrimination can be proven via deliberate indifference. *See Liese*, 701 F.3d at 345; *S.H.*

11

*ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 262–65 (3d Cir. 2013); *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 275–276 (2d Cir. 2009); *Barber ex rel. Barber v. Colo. Dep't of Revenue*, 562 F.3d 1222, 1228–29 (10th Cir. 2009); *Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1138–39 (9th Cir. 2001).

Because there is a substantial interest in preserving a uniform approach to this question, we too will proceed under that standard. *See Koon*, 50 F.4th at 404 (assuming a deliberate indifference standard applies in a case presenting ADA and RA claims for compensatory damages). We emphasize, however, that this requires much more than a showing of pure negligence. As the Supreme Court has said in the Eighth Amendment context, deliberate indifference lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other." *Farmer v. Brennan*, 511 U.S. 825, 836 (1994).

B.

Accordingly, under Section 504 of the Rehabilitation Act, we must determine whether Novant acted with deliberate indifference to Basta's federal rights. This standard requires a plaintiff to plausibly plead that a defendant (1) *knew* that harm to a federally protected right was substantially likely and (2) *failed to act* on that likelihood. *Koon*, 50 F.4th at 405. In the context of failing to provide an effective auxiliary aid, a plaintiff "must show that the defendants knew there was a substantial likelihood that they would be unable to communicate effectively with [a deaf patient or companion] but still made a deliberate choice not to provide one." *McCullum v. Orlando Reg'l Healthcare Sys., Inc.*, 768 F.3d 1135, 1147–48 (11th Cir. 2014) (internal quotations omitted).

12

One thing a deliberate indifference standard does not require in this context, however, is some obvious pattern of mechanical failure in auxiliary aids provided by the hospital. The district court reasoned that "systemic and pervasive problems, rather than an isolated incident" in the provided VRI services "must exist to succeed in showing intentional discrimination through deliberate indifference." *Basta*, 2022 WL 5326367 at *3.

We disagree. Requiring plaintiffs to make this showing improperly shifts the emphasis under the Rehabilitation Act from the violation of an individual right at a discrete point in time to widespread violations, spanning across multiple people or multiple visits. It is well-known that civil rights statutes exist, among other reasons, to protect a single individual from a statutory violation without the invariable need to prove a "systemic and pervasive problem[]," as the district court held. The RA, like other civil rights statutes, seeks to "provide *individual* citizens effective protection against [discriminatory] practices." *Cannon v. Univ. of Chicago*, 441 U.S. 677, 704 (1979) (emphasis added). Requiring plaintiffs who suffered a violation of the RA to show a longstanding pattern of similar violations defeats this goal. While a history of violations is relevant evidence to proving deliberate indifference, it cannot be equated with the standard itself. *See Farmer*, 511 U.S. at 842 ("longstanding, pervasive, [and] well-documented" rights violations can be circumstantial evidence that defendants "had been exposed to information concerning the risk and thus must have known about it"); *see also Silva v. Baptist Health S. Fla., Inc.*, 838 Fed. App'x 376, 382 (11th Cir. 2020) (finding evidence that several plaintiffs

13

"routinely" experiencing malfunctioning VRI was enough of a showing of deliberate indifference to survive summary judgment).

Instead, "[d]eliberate indifference is, at bottom, an actual-notice standard." *Koon*, 50 F.4th at 406. In the context of this case, "the simple failure to provide an [in-person] interpreter on request is not necessarily deliberately indifferent to an individual's rights under the RA." *Liese*, 701 F.3d at 343. But demonstrating that a hospital had notice of a patient's need for auxiliary aids and failed to provide them despite knowledge that the patient could not effectively communicate without such aids supports a finding of deliberate indifference. *See Duvall*, 260 F.3d at 1140.

## III.

With these standards in mind, Basta sufficiently pled intentional discrimination under the Rehabilitation Act to survive a motion to dismiss. We review the district court's dismissal order de novo. *Wilcox v. Brown*, 877 F.3d 161, 166 (4th Cir. 2017). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Carey v. Throwe*, 957 F.3d 468, 474 (4th Cir. 2020) (internal quotations omitted). This procedural posture requires us to assume the truth of all well-pled facts and draw reasonable inferences in favor of Basta. *Id.*

## A.

The complaint made a showing that Novant Health staffers both knew of a substantial likelihood that Basta would be unable to communicate without an appropriate auxiliary aid, yet still made a conscious choice not to provide one. *See McCullum*, 768 F.3d at 1147–48. Although hospital staff provided some auxiliary aids in the form of two VRI

14

machines, its failure to address the substantial shortcomings of these devices over a three-day period despite repeated requests for an interpreter gives rise to a plausible inference of deliberate indifference. *See, e.g., Crane v. Lifemark Hosp.*, 898 F.3d 1130, 1133, 1136 (11th Cir. 2018); *Loeffler*, 582 F.3d at 276–77.

The facts show that Basta is a "profoundly deaf" individual who requires "auxiliary aids and services to communicate effectively in a medical setting." Am. Compl. ¶¶ 3-4. Basta alleged that he alerted Novant Health of his need for an interpreter well in-advance of his arrival, pursuant to its policy of providing free interpreter services to the hearing-impaired. Am. Compl. ¶¶ 10, 16. Hospital staff allegedly stated it would comply with that request. Am. Compl. ¶ 17. Basta then again told Novant Health of his need for an interpreter on his way to the hospital. Am. Compl. ¶ 18. This was sufficient to put Novant Health on notice that Basta was a hearing-impaired individual who was entitled under Section 504 to an accommodation in the form of an auxiliary aid. *See Koon*, 50 F.4th at 407; *see also Duvall*, 260 F.3d at 1139 ("When the plaintiff has alerted the public entity to his need for accommodation…, the public entity is on notice that an accommodation is required, and the plaintiff has satisfied the first element of the deliberate indifference test.").

The complaint goes on to allege that Novant provided two malfunctioning VRI devices. Am. Compl. ¶¶ 20–21. These devices would have satisfied Novant's Section 504 obligations had they functioned correctly. Indeed, "the proper inquiry [under Section 504] is whether the auxiliary aid that a hospital provided to [a] hearing-impaired [individual] gave that [individual] an equal opportunity to benefit from the hospital's treatment." *Liese*,

15

701 F.3d at 343. The RA's regulations are clear that "other aids for persons with impaired hearing" besides interpreters may satisfy the auxiliary aid requirement. 45 C.F.R. § 84.52(d)(3). Therefore, a failure to provide an in-person interpreter need not beget a finding of deliberate indifference. *See, e.g., Liese*, 701 F.3d at 343. However, the "other aids" must work. The machines here malfunctioned. Basta's complaint alleged that both machines were "blurry, choppy, and did not have a clear enough picture" for him to understand what the remote interpreter was conveying. *See* Am. Compl., ¶¶ 20–21. Further, the second VRI device was plugged far away from Mrs. Basta's bed, forcing Basta to leave her in order to understand what was going on. Am. Compl. ¶ 23.

Had the malfunctioning VRI been the only issue, this might have been a case where "good-faith efforts to remedy the plaintiff's problems…prevent finding deliberate indifference." *Koon*, 50 F.4th at 407. Indeed, Novant Health insists that it had no way of knowing that the VRI would malfunction. *See* Resp. Br. at 13–15. The crux of Basta's claim, however, is not the malfunctioning VRI on the first day of his stay: it is that despite repeated requests for another auxiliary aid, such as an in-person interpreter, Novant Health did *nothing* to ensure that Basta could communicate with its staff for the rest of his three days at the hospital. The complaint alleges that Basta "made repeated requests for interpreters" from June 2 to June 4, 2017. Am. Compl. ¶ 26. Further, the complaint alleges that "Basta was unable to understand what was happening throughout the delivery process" and he "was not given the opportunity to ask any questions concerning his wife's treatment and was thus unaware if she had any medical concerns." Am. Compl. ¶ 23.

16

After the VRI devices malfunctioned, Basta repeatedly requested an interpreter. Defendant's staff requested in turn that he sign a form regarding the malfunctioning VRI machine, which raises a plausible inference that they knew of its inefficacy and of his need for continued interpretive services. *See* Am. Compl. ¶ 24. Instead, Novant required Basta to communicate via lip-reading, which Basta alleges he could not understand. Am. Compl. ¶ 3. The important issue again is that Novant did *nothing* to remedy this situation despite having ample time to do so. Therefore, Basta pled a sort of "apath[y]" that shows Novant's "indifference to [Basta's] rights may have been so pervasive as to amount to a choice." *Loeffler*, 582 F.3d at 277.

### B.

We emphasize that finding deliberate indifference via failure to provide effective auxiliary aids under the RA varies from case to case. Plaintiffs are entitled to have their disability effectively accommodated, but what such effective accommodation requires is based on the abilities of the individual, the nature and complexity of the information exchanged, and the overall context of the situation. *See, e.g.*, 28 C.F.R. § 36.303(c)(1)(ii). In sum, "[t]he task of determining whether an entity subject to the RA has provided appropriate auxiliary aids where necessary is inherently-fact intensive[.]" *Crane*, 898 F.3d at 1135. Here more factual development is needed. The district court erred in dismissing Basta's RA claim at the motion to dismiss stage.

### IV.

It matters not that plaintiff Basta was not himself the patient. Regulations, in this case under the ADA, create "an obligation to provide effective communication to

17

companions" with disabilities. 28 C.F.R. § 36.03(c)(1). Given the often-interlocking nature of the disability statutes in this case, it is easy to see why that guidance would be applicable here. Patients often arrive at hospitals in pain, unconscious, or feeling intense stress. In these situations, which can be not only confusing but overwhelming, a patient's companion, often a spouse or a family member, may be the only advocate available. To have that single advocate barred from communication with a hospital and its staff is to leave the patient stranded. Basta, a hearing-impaired individual, was unable to communicate his wife's complicated medical history to her doctors during childbirth, despite repeated requests for some effective means of doing so. The situation was a high-risk one for the couple, and the medical event one of the highest urgency and meaning.

Accordingly, we must reverse the district court's judgment dismissing Basta's Rehabilitation Act claim. We remand this case for further proceedings consistent with this opinion. Since Basta's Affordable Care Act claim is predicated on the plausibility of his Rehabilitation Act claim, we reverse the district court's judgment dismissing that claim as well, and remand for such other and further proceedings as may be appropriate.

*REVERSED AND REMANDED*