# United States Court of Appeals
## For the First Circuit

No. 25-1359

REBECCA HOLLAND, on her own behalf and on behalf of those
similarly situated,

Plaintiff, Appellant,

v.

ELEVANCE HEALTH, INC., f/k/a Anthem, Inc.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. Lance E. Walker, U.S. District Judge]

Before

Montecalvo, Lynch, and Thompson,
Circuit Judges.

Anna P. Prakash, with whom Kiese T. Hansen, Nichols Kaster,
PLLP, Eleanor Hamburger, Richard E. Spoonemore, Ari Robbins
Greene, Sirianni Youtz Spoonemore Hamburger PLLC, Shelby Leighton,
and Public Justice were on brief, for appellant.

Elizabeth Parr Hecker, with whom Raymond A. Cardozo, Carol B.
Lewis, Daniel J. Hofmeister, Bryan M. Webster, Alex M. Lucas, and
Reed Smith LLP were on brief, for appellee.

March 27, 2026

**MONTECALVO, <u>Circuit Judge</u>.**    Rebecca Holland filed a putative class action against Elevance Health, Inc. ("Elevance"), alleging that it designed and administered a health insurance plan -- through its subsidiary Anthem Health Plans of Maine, Inc. ("Anthem") -- that excluded coverage for weight-loss medication (the "Exclusion").[1]    Holland alleged that the Exclusion violated federal law because it discriminated against plan enrollees diagnosed with obesity.    The district court dismissed the matter, concluding that Holland's allegations failed to plausibly support her theories of unlawful disability discrimination.    For the reasons stated below, we affirm.

## I. Background

### A. Factual Background[2]

As a Falmouth Public Schools employee, Holland is enrolled in a health insurance plan (the "Plan") through the Maine Education Association Benefits Trust.    Anthem, a health insurance company, designed and administers the Plan.    The Plan contains an exclusion in its "What's Covered" section under the heading "Bariatric Surgery / Morbid Obesity," which states, in relevant

---

[1] Elevance Health, Inc. was formerly known as Anthem, Inc. Elevance's subsidiary, Anthem Health Plans of Maine, Inc., does business as Anthem Blue Cross and Blue Shield.

[2] We take the facts from Holland's complaint and draw all reasonable inferences in her favor. <u>Freeman</u> v. <u>Town of Hudson</u>, 714 F.3d 29, 33 (1st Cir. 2013) (citing <u>San Juan Cable, LLC</u> v. <u>P.R. Tel. Co.</u>, 612 F.3d 25, 28 (1st Cir. 2010)).

part, that "[b]enefits are not provided for weight loss medications."

In September 2022, Holland visited Dr. Rebecca Hemphill's office "to discuss anti-obesity treatment." There, Holland met with a physician assistant who diagnosed Holland with obesity and indicated that Holland had been unable to sustain weight loss despite her diet and exercise attempts. Accordingly, the physician assistant prescribed Holland an FDA-approved weight-loss medication, Wegovy, to treat her obesity. However, Anthem denied coverage for Wegovy. When the physician assistant prescribed Holland another FDA-approved weight-loss medication, Contrave, Anthem again denied coverage. Eventually, Dr. Hemphill appealed Anthem's coverage denial for Wegovy, emphasizing Holland's eligibility for the medication, Holland's medical history, and supporting medical literature. Despite the appeal, Anthem did not provide coverage for the weight-loss medication.

In July 2023, Holland's new doctor, Dr. Jared Cassin, wrote a letter to Anthem to assist Holland with obtaining coverage for weight-loss medication to treat her obesity.[3] In the letter, Dr. Cassin explained how Holland would benefit from such medication, noting Holland's obesity and binge eating disorder

_____

[3] In between her move from Dr. Hemphill to Dr. Cassin, Holland was able to treat her obesity by paying out-of-pocket for semaglutide -- a medication typically sold under the brand names Ozempic and Wegovy -- through a compounding pharmacy.

diagnoses. Still, Anthem did not provide coverage. Over a year later, Dr. Cassin submitted to Anthem a preauthorization request for Wegovy on Holland's behalf. In denying the request, Anthem told Dr. Cassin's office that it could not process the request because Holland's Plan did not cover Wegovy.

## B. Procedural Background

On September 20, 2024, Holland -- on behalf of herself and a proposed class -- sued Anthem's parent company, Elevance, for disability discrimination under Section 1557 of the Patient Protection and Affordable Care Act ("ACA"), 42 U.S.C. § 18116. Holland alleged that Elevance designed and administered health plans that discriminated "based on the disabling condition of obesity." Elevance moved to dismiss.

On April 9, 2025, the district court granted Elevance's motion to dismiss. The district court rejected as "conclusory" Holland's allegations that she and every Plan participant with an obesity diagnosis and weight-loss medication prescription were disabled. Rather, the district court explained that whether a health condition results in disability under the Americans with Disabilities Act ("ADA") was "not a formulaic inquiry based on a mere diagnosis and prescription" but was an "individualized inquiry." But "for purposes of the [m]otion to [d]ismiss" the district court assumed that Holland "alleged individual limitations that ma[de] her allegation of disability plausible."

Nonetheless, the district court rejected Holland's discrimination allegations as conclusory and conjectural. It reasoned that the Exclusion under the Plan applied even if an enrollee was overweight rather than obese, and that the Exclusion operated for both overweight and obese participants regardless of whether they were disabled. Accordingly, the district court determined that, "on its face, the [E]xclusion does not turn on disability status, impacts participants whether they are disabled or not, and does not isolate disabled participants for discriminatory treatment." Thus, the district court concluded that Holland's allegations did not support a plausible finding that the Exclusion amounted to "intentional, proxy, disparate impact, or deliberate indifference discrimination against Holland or the putative class."

Lastly, the district court declined to rule on whether Elevance or Anthem, as Elevance's subsidiary administering the Plan at issue, was the appropriate defendant in this Section 1557 action. Rather, it determined that due to "the lack of reliable guidance on the issue," it would rest its decision to dismiss on Holland's failure to state a disability discrimination claim. Holland's timely appeal followed.

## II. Standard of Review

"This court reviews de novo a district court's dismissal of a plaintiff's complaint under Rule 12(b)(6)." Rae v. Woburn

Pub. Schs., 113 F.4th 86, 98 (1st Cir. 2024), cert. denied, 145 S. Ct. 1431 (2025). "To assess whether a complaint can withstand a Rule 12(b)(6) motion, we 'must accept as true all well-pleaded facts[,] indulging all reasonable inferences in Appellant's favor.'" Id. (citation modified) (quoting Fantini v. Salem State Coll., 557 F.3d 22, 26 (1st Cir. 2009)).

### III. Discussion

Holland raises three issues on appeal. First, Holland argues that the district court erred in concluding that she failed to plausibly state a claim of disability discrimination. Rather, Holland asserts that she sufficiently stated a claim for intentional discrimination, proxy discrimination, and disparate impact discrimination. Second, Holland contends that the district court erred in its "commentary" regarding whether Elevance is the proper defendant in this case. Lastly, Holland asserts that the district court "improperly opined" on whether disability status can be proven on a class-wide basis. We need not address the latter two issues because, for the reasons stated below, we hold that Holland failed to plausibly state a claim for disability discrimination under Section 1557.

### A. Background Law

The ACA proscribes discrimination in the design or implementation of a health insurance plan adopted by a provider that receives federal funding. See 42 U.S.C. § 18116(a); id.

§ 18022(b)(4)(B)-(C); 45 C.F.R. § 156.125(a). Specifically, Section 1557 provides that "an individual shall not . . . be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance" on the grounds prohibited under four federal nondiscrimination statutes. 42 U.S.C. § 18116(a). The prohibited ground relevant here stems from Section 504 of the Rehabilitation Act ("Section 504"), which proscribes discrimination "solely by reason of [an individual's] disability." 29 U.S.C. § 794(a). Along with the other nondiscrimination statutes it incorporates, Section 1557 applies the enforcement mechanisms provided under Section 504. See 42 U.S.C. § 18116(a). Thus, "the case law construing the Rehabilitation Act" applies to Holland's Section 1557 claim "for disability discrimination by a health care insurer." See Schmitt v. Kaiser Found. Health Plan of Wash., 965 F.3d 945, 954 (9th Cir. 2020). Accordingly, pleading a disability discrimination claim under Section 504, as incorporated by Section 1557, requires Holland to show: "(1) that she is disabled; (2) that she sought services from a federally funded entity; (3) that she was 'otherwise qualified' to receive those services; and (4) that she was denied those services 'solely by reason of her . . . disability.'" Lesley v. Hee Man Chie, 250 F.3d 47, 53 (1st Cir. 2001) (alteration in original). Elevance disputes the first,

- 7 -

third, and fourth elements, each of which must be proven.  Like the district court, we focus on the fourth element -- the "solely by reason of her disability" prong.  Holland's claim fails at this fourth element.

## B. Proxy Discrimination

We first address Holland's allegation that the Exclusion constitutes proxy discrimination.  This Circuit has never recognized a proxy discrimination theory, whether framed as a theory of disparate impact or facial discrimination.  But, as we will explain below, Holland's proxy discrimination claim fails even under the law of those circuits which have posited the viability of such claims.  In courts which do so, proxy discrimination may be found to exist when "the defendant enacts a law or policy that treats individuals differently on the basis of seemingly neutral criteria that are so closely associated with the disfavored group that discrimination on the basis of such criteria is, constructively, facial discrimination against the disfavored group."  Pac. Shores Props., LLC v. City of Newport Beach, 730 F.3d 1142, 1160 n.23 (9th Cir. 2013).  When those courts analyze a proxy discrimination claim, the central inquiry is "whether the proxy's 'fit' is 'sufficiently close' to make a discriminatory inference plausible."  Schmitt, 965 F.3d at 959 (quoting Davis v. Guam, 932 F.3d 822, 838 (9th Cir. 2019)).  For instance, "discriminating against individuals with gray hair is a proxy for

age discrimination because 'the "fit" between age and gray hair is sufficiently close.'" Pac. Shores Props., 730 F.3d at 1160 n.23 (quoting McWright v. Alexander, 982 F.2d 222, 228 (7th Cir. 1992)).

In her complaint, Holland alleges that "all people diagnosed with obesity who require prescription medications to treat" the condition meet the definition of "disability" such that excluding coverage for weight-loss prescription medication "discriminates against people with the disability of obesity." She then alleges that "there is a reasonably strong correlation between disability and treatment with medically necessary weight loss drugs, as indicated by Anthem's Prescription Drug List,"[4] and thus, there is a close "fit" between individuals with obesity and those who require the prescription weight-loss medications for which the Plan excludes coverage. She relies on these allegations in her brief to assert that excluding coverage for weight-loss medications is a proxy for discriminating against enrollees with "disabling obesity" because such enrollees "overwhelmingly or entirely" comprise the individuals who seek coverage for weight-loss medications.

---

[4] Anthem's Prescription Drug List comprises the prescription medications generally covered under the enrollee's health insurance plan, though, such medications are subject to coverage limitations or exclusions enumerated in the enrollee's plan design.

- 9 -

Elevance counters that "Anthem administers other [health insurance] plans that cover weight loss medication" and, thus, there is no "fit" between the Exclusion and disability because "coverage depends on the plan, not disability status." Further, Elevance asserts that Holland's complaint "does not include any allegations about the population of overweight plan participants who are eligible for prescription weight loss drug coverage, the percentage who are prescribed such drugs, the percentage who seek coverage for such drugs, or how these factors compare to the needs of the population of individuals diagnosed with obesity." Elevance argues that the lack of such allegations is fatal to Holland's proxy discrimination claim because her complaint fails to demonstrate who would or would not be affected by the Exclusion.

Even were we to assume dubitante the viability of such a proxy discrimination theory under Section 1557, we hold that Holland has not adequately pled that the Exclusion is "so closely associated with" people with disabling obesity as to amount to proxy discrimination. See id. This is because Anthem's Prescription Drug List does not provide a basis to reasonably infer that the weight-loss medications enumerated within it are medically necessary only when treating obesity such that those with disabling obesity are the enrollees "overwhelmingly or entirely" impacted by the Exclusion. Anthem's Prescription Drug List does not set forth the criteria an enrollee must meet for a

provider to prescribe, as medically necessary, any of the listed drugs. Even the sources Holland cited and linked to in her complaint[5] indicate that the "anti-obesity" medications in Anthem's Prescription Drug List, such as Wegovy and Zepbound, are FDA-approved for weight management for individuals with obesity or who are overweight with a weight-related condition "such as high blood pressure, type 2 diabetes or high cholesterol."[6] These sources show that individuals without disabling obesity may also require and be eligible for treatment with the prescription weight-loss medications included on Anthem's Prescription Drug List. Thus,

---

[5] When reviewing an order of dismissal for failure to state a claim, we may "consider facts from 'documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice.'" Saccoccia v. United States, 955 F.3d 171, 172 (1st Cir. 2020) (quoting Butler v. Balolia, 736 F.3d 609, 611 (1st Cir. 2013)).

[6] See FDA Approves New Drug for Chronic Weight Management, First Since 2014, FDA (Jun. 4, 2021), https://www.fda.gov/news-events/press-announcements/fda-approves-new-drug-treatment-chronic-weight-management-first-2014 [https://web.archive.org/web/20250324145450/https://www.fda.gov/news-events/press-announcements/fda-approves-new-drug-treatment-chronic-weight-management-first-2014] (announcing the FDA's approval of Wegovy for chronic weight management in adults who are overweight (defined as those with a body mass index of twenty-seven kilograms per square meter or greater) with at least one weight-related ailment or adults with obesity (defined as a body mass index of thirty kilograms per square meter or greater)); FDA Approves New Medication for Chronic Weight Management, FDA (Nov. 8, 2023), https://www.fda.gov/news-events/press-announcements/fda-approves-new-medication-chronic-weight-management [https://perma.cc/RM2S-TF9R] (announcing the FDA's approval of Zepbound for chronic weight management in adults who are overweight with at least one weight-related condition or adults with obesity).

- 11 -

despite Holland's assertions, Anthem's Prescription Drug List does not support a plausible claim that there is a close "fit" or a sufficiently close association between individuals with obesity and those who require prescription weight-loss medications.

That said, Holland alleges that just because the Exclusion may also impact non-disabled people, "a form of 'over-discrimination,'" does not mean Elevance is relieved from liability. For support, Holland cites Schmitt, in which the Ninth Circuit noted that the fact that the policy exclusion at issue in that case also affected some non-disabled people did not doom the plaintiffs' proxy discrimination claim because "overdiscrimination is prohibited." 965 F.3d at 958 (quoting Pac. Shores Props., 730 F.3d at 1160). However, in Schmitt, the plaintiffs' proxy discrimination allegations still failed because their complaint did "not make clear to what extent the proxy [was] overinclusive." Id. at 959. The Ninth Circuit noted that the class of people the plaintiffs alleged were affected by the challenged policy included non-disabled individuals, and thus it was "impossible to infer whether the exclusion primarily affect[ed] disabled persons." Id. The Ninth Circuit also rejected the plaintiffs' attempt to minimize the alleged proxy's over-inclusiveness by claiming that "few, if any, non-disabled insureds had claims denied under the [exclusion]." Id. The court explained that such allegation needed "further explanation to be plausible." Id.

Like the Schmitt plaintiffs, Holland suggests that the Exclusion has no significant effect on non-disabled enrollees, asserting in her complaint that the "weight control" treatments non-disabled enrollees seek "are not typically medical in nature" as such treatments are not prescribed by a licensed health provider and do not treat diagnosed obesity or a co-morbid condition. Further, Holland alleges that, under the Plan, such individuals would not be eligible for coverage of these treatments regardless of the Exclusion. While not as terse as the arguments rejected in Schmitt, these allegations comprise "unsubstantiated conclusions," devoid of any underlying factual support that would permit us to accept them as true.[7] See Waleyko v. Phelan, 146 F.4th 89, 95-96 (1st Cir. 2025).

Holland must offer more than conjecture to plausibly allege that the Exclusion disproportionately affects people with disabilities. See Frith v. Whole Foods Mkt., Inc., 38 F.4th 263, 274 (1st Cir. 2022) ("[A] complaint's factual allegations must be sufficient to take a claim beyond the realm of pure conjecture,

_____

[7] In Holland's brief, she argues that, under the Plan, "prescription medications are only covered when medically necessary for a diagnosed 'illness or injury.'" Therefore, she contends that because being overweight is not an illness or injury, even without the Exclusion, no coverage obligation attaches for overweight individuals seeking prescription medication for weight loss. But such an argument was not before the district court, and thus, we consider it waived on appeal. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

that is, across the line from conceivable to plausible." (citation modified)). When stripped of such conjecture and down to its bare bones, Holland's complaint lacks the facts needed to support a plausible finding that there is a sufficiently close "fit" between individuals with obesity and individuals who require prescription weight-loss medication. This in turn inhibits our ability to infer that the Exclusion is a proxy for disability discrimination against individuals with, as Holland asserts, "disabling obesity." Accordingly, Holland fails to state a claim for proxy discrimination.

## C. Intentional Discrimination

Holland attempts to show intentional discrimination by alleging that: (1) the Plan constitutes facial discrimination; and (2) Elevance acted with deliberate indifference. We address each allegation in turn.

### 1. Facial Discrimination

Holland alleges that the Plan constitutes facial discrimination against enrollees with obesity because the Plan expressly excludes prescription medications to treat obesity, while enrollees without an obesity diagnosis have access to prescription medications to treat their medical conditions. To illustrate the alleged express exclusion, Holland points to the plain language of the Plan's "Bariatric Surgery / Morbid Obesity" section. Holland asserts that this section, which she contends is

the Exclusion, explicitly targets obesity because it uses the term "Morbid Obesity" to indicate that "[b]enefits are not provided for weight loss medications."  She further explains that this section excludes all treatment for obesity, including prescription medication, except for "extremely limited" bariatric surgery coverage.  Holland asserts that these features of the Plan evince facial discrimination against enrollees diagnosed with obesity.

Elevance counters that the Exclusion is not discriminatory because it applies to all enrollees, regardless of whether they are obese.  Elevance also asserts that any health insurance plan will cover some treatments but not others, and therefore, the Plan does not establish intentional discrimination simply because it provides coverage for treatments of only some medical conditions.

Holland's facial discrimination theory is unavailing.  Under the Plan, the Exclusion does not apply solely because an enrollee is diagnosed with obesity.  Rather, in addition to its inclusion in the "Bariatric Surgery / Morbid Obesity" section, the Exclusion is also enumerated under a section titled "What's Not Covered Under Your Prescription Drug . . . Pharmacy Benefit," where it indicates that "[a]ny [d]rug mainly used for weight loss" is not covered.  This iteration of the Exclusion is not tethered to a specific condition.  Thus, on its face, the Exclusion is neutral

- 15 -

because it applies to all enrollees who seek coverage for weight-loss medications -- not just enrollees with obesity.

## 2. Deliberate Indifference

Next, Holland argues that her intentional discrimination claim can be shown under a deliberate indifference theory. Holland asserts that Elevance acted with deliberate indifference by historically excluding anti-obesity medications and designing and administering a health insurance plan that excludes coverage for prescription weight-loss medications that treat obesity without: (1) conducting a cost-benefit analysis; or (2) evaluating whether the Exclusion complied with the ACA's nondiscrimination requirements or was based on medical and scientific evidence. She contends that these allegations clearly demonstrate "thoughtless indifference or benign neglect."

Elevance counters that other circuits have determined that "obesity[,] standing alone[,] does not qualify as a recognized disability under federal law." Thus, Elevance contends that Holland has not plausibly alleged that Anthem knew or should have known that obesity is a federally protected disability or that Anthem was substantially likely to violate Section 1557 when designing and administering the Exclusion.

This Circuit has never held that a plaintiff alleging disability discrimination may show intentional discrimination by showing deliberate indifference. But assuming dubitante that a

plaintiff may do so, Holland has not plausibly stated a claim for deliberate indifference. To state a deliberate indifference claim, Holland must allege that the defendant (1) had "knowledge that a harm to a federally protected right is substantially likely" and (2) "fail[ed] to act upon that likelihood." Lovell v. Chandler, 303 F.3d 1039, 1056 (9th Cir. 2002).

To begin, alleging "thoughtless indifference or benign neglect" is not sufficient to state a claim for deliberate indifference. See Basta v. Novant Health Inc., 56 F.4th 307, 317 (4th Cir. 2022) (noting that a deliberate indifference claim under Section 504 "requires much more than a showing of pure negligence"); Updike v. Multnomah Cnty., 870 F.3d 939, 951–52 (9th Cir. 2017) ("[T]o meet the second element of the deliberate indifference test, a failure to act must be a result of conduct that is more than negligence, and involves an element of deliberateness.") (quoting Duvall v. Cnty. of Kitsap, 260 F.3d 1124, 1139 (9th Cir. 2001), as amended on denial of reh'g (Oct. 11, 2001)).

Holland's pleadings do not raise a plausible inference that Elevance knowingly and intentionally discriminated by being deliberately indifferent that individuals diagnosed with obesity and prescribed weight-loss medications are disabled under the ADA -- the statute from which Section 504, and Section 1557 by

extension, borrow their "disability" definition.[8]  See 29 U.S.C. § 705(9).  Holland suggests that our decision in Cook v. State of R.I., Dep't of Mental Health, Retardation, & Hosps., 10 F.3d 17 (1st Cir. 1993), "established that obesity can be a federally protected disability."  But even if we were to assume that obesity could be a federally protected disability, that, without more, does not raise a plausible inference that Elevance knew that those diagnosed with obesity and prescribed weight-loss medications are disabled.  Without such an inference, it does not then logically follow that Elevance knew that the Exclusion was substantially likely to harm the federally protected rights of disabled individuals under Section 1557.  Accordingly, Holland's allegations are insufficient to state a claim for deliberate indifference under Section 1557.

### D. Disparate Impact

Turning to Holland's disparate impact claim, she alleges that the Exclusion disparately impacts Plan enrollees diagnosed with obesity.  She argues that such enrollees "do not have 'meaningful access' to the prescription drug benefit" due to the

---

[8] Under the ADA, "disability" is defined, in part, as "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A).

Exclusion, while enrollees without obesity "have access to medically necessary medications to treat their conditions."

Elevance counters that individuals with or without obesity have meaningful access to other Anthem-administered plans that cover weight-loss medications. Further, Elevance explains that a plan that excludes weight-loss medication coverage for all enrollees cannot disparately impact an enrollee by denying a benefit that it never offered. Elevance also contends that Holland's failure to plead facts that: (1) provide any basis for the court to assess or estimate what portion of those affected by the Exclusion are disabled; or (2) illuminate "the percentage of plan members [who] . . . seek coverage for medical or surgical treatments as opposed to prescription drugs" is sufficient to merit dismissal of Holland's disparate impact claim.

We hold that Holland has failed to adequately allege that enrollees diagnosed with obesity do not have meaningful access to the prescription drug benefit. In <u>Alexander</u> v. <u>Choate</u>, the Supreme Court rejected "the boundless notion that all disparate-impact showings constitute prima facie cases under [Section] 504." 469 U.S. 287, 299 (1985). Instead, the Court determined that a disparate impact claim might arise under Section 504 when an otherwise qualified disabled individual is denied "<u>meaningful access</u> to the benefit that the grantee offers." <u>Id.</u> at 301 (emphasis added). <u>Choate</u> centered on Medicaid recipients'

- 19 -

challenge to a proposed reduction in the number of inpatient hospital days that Tennessee's Medicaid program covered from twenty days to fourteen days. Id. at 289-90. The plaintiffs argued that the reduction would disproportionately affect people with disabilities, who generally required longer care, and thus constituted unlawful discrimination under Section 504. Id. The Court assessed Section 504 and the relevant statutes and regulations to determine the benefit guaranteed under the Medicaid Act and the scope of that benefit. Id. at 303-06. The Court, in part, found that Section 504 did not "guarantee [disabled people] equal results from the provision of state Medicaid . . . ."[9] Id. at 304.

Here, unlike in Choate, Holland's allegation that enrollees diagnosed with obesity "do not have 'meaningful access' to the prescription drug benefit" does not set forth a basis to discern the scope of such benefit under the ACA. For instance, Holland did allege that the ACA "requires covered health entities to ensure that their benefit design and administration do not

_____

[9] The Court in Choate held that the fourteen-day limitation did not deny the plaintiffs "meaningful access to Tennessee Medicaid services" because: (1) the facially neutral limitation did not "invoke criteria that ha[d] a particularly exclusionary effect" on disabled individuals; (2) there was no evidence that disabled individuals would not "benefit meaningfully from the coverage" received under the fourteen-day rule; and (3) the reduction in coverage would leave both disabled and nondisabled individuals with full access to "identical and effective hospital services." Id. at 302.

result in disability discrimination."  But the ACA's prohibition on discrimination in benefit design and implementation does not give rise to a reasonable inference that health entities must design benefits in a manner that provides coverage for every form of medically necessary treatment for a disabled individual's particular condition.  Accordingly, absent sufficient factual allegations as to the scope of the benefits guaranteed under the ACA, Holland fails to plausibly allege lack of meaningful access, and thus her disparate impact claim fails.

## IV. Conclusion

For the foregoing reasons, we **<u>affirm</u>** the district court's order granting Elevance's motion to dismiss.