**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 21-2385**

_____

ANDREAS ALBERTI,

             Plaintiff – Appellant,

       v.

THE RECTOR AND VISITORS OF THE UNIVERSITY OF VIRGINIA,

             Defendant – Appellee.

_____

Appeal from the United States District Court for the Western District of Virginia, at Charlottesville.  Norman K. Moon, Senior District Judge.  (3:21–cv–00014–NKM–JCH)

_____

Argued:  December 7, 2022                          Decided:  April 14, 2023

_____

Before AGEE, DIAZ, and QUATTLEBAUM, Circuit Judges.

_____

Affirmed by published opinion. Judge Quattlebaum wrote the opinion in which Judge Agee and Judge Diaz joined.

_____

**ARGUED:**    Ellen Kyriacou Renaud, ALAN LESCHT & ASSOCIATES, P.C., Washington, D.C., for Appellant.    Amy Elizabeth Hensley, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellee. **ON BRIEF:** Jason S. Miyares, Attorney General, Steven G. Popps, Deputy Attorney General, Sandra S. Gregory, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellee.

_____

QUATTLEBAUM, Circuit Judge:

The University of Virginia dismissed Andreas Alberti from his doctoral program after he received two unsatisfactory grades over the course of two semesters. As a result, he was also terminated from his research assistant position. In response, Alberti sued the Rector and Visitors of the University of Virginia, claiming those actions violated Title VI and VII of the Civil Rights Act. He alleged his supervisor discriminated against him because he was a Swiss national. He also alleged that when he reported the incidents of alleged discrimination—disparaging comments from his supervisor—to the school's Office for Equal Opportunity and Civil Rights, his supervisor retaliated by giving him bad grades. And as a result of those grades, Alberti continued, the school dismissed him from the doctoral program and terminated his research assistant position. The district court granted the school's motion to dismiss, finding that under Rule 12(b)(6) of the Federal Rules of Civil Procedure, Alberti failed to allege plausible claims for which relief can be granted. For the reasons set forth below, we affirm.

I.

In January 2016, Alberti enrolled in the University of Virginia's chemical engineering doctoral program.[1] As a graduate student, he also served as a research assistant

---

[1] The facts, as described here, are from Alberti's complaint. As we must, we accept them as true and draw all reasonable inferences from them in Alberti's favor for purposes of reviewing a district court's dismissal of an action under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).

for Professor Giorgio Carta. Carta, a native of Italy, supervised Alberti's doctoral research, which included research projects for Pfizer, Inc.'s research and development teams.

Alberti complains that Carta began making negative comments toward him in 2016, a few months after he enrolled in the program. Once, Carta told him that the school he attended in Switzerland did not properly educate him. Carta also told Alberti that he did not speak "the correct German language . . . because it is the German used by the Swiss." J.A. 8. Carta repeatedly told Alberti that he didn't "speak proper English." J.A. 8. And late in 2016, after Alberti brought Carta Swiss chocolates as a thank you gift, Carta said "[a]t least, the Swiss are able to manufacture chocolate." J.A. 8.

In addition to these remarks, Carta criticized Alberti's attitude and intelligence. He said Alberti "doesn't make things work because [he has] a masochistic personality" and that his "intellectual abilities are limited." J.A. 9. He also told Alberti that he was "missing intellectual curiosity." J.A. 9.

In July 2018, Alberti reported Carta's comments to the school's Office for Equal Opportunity and Civil Rights. But, according to Alberti, the criticism continued and intensified. In October 2018, Carta said that the Swiss are "nationalists" and "hunters" who must "defend their country." J.A. 9. Carta also told Alberti that "grocery stores in Switzerland don't provide good salads and veggies." J.A. 9. Later, Carta said "people from your area are predisposed to kidney stones." J.A. 9.

Alberti alleges that Carta also mistreated him in academic matters. Carta required Alberti to postpone his doctoral research proposal examination from June 2018 to January

3

2019 but then complained about the delay he ordered. Carta also imposed unrealistic deadlines for Alberti's research work for Pfizer.

In 2019, Alberti again complained about Carta to the Department of Chemical Engineering, this time requesting a different supervisor. The Chair of the Department of Chemical Engineering denied this request.

Despite the obstacles he faced, Alberti provided quality research for Pfizer. He also met the deadlines Carta imposed. And based on Alberti's work, Pfizer extended the research project by two years—from 2018 to 2020—and provided an additional $100,000 in funding. Then, in November 2019, Carta submitted Alberti's abstract to Pfizer and described it to Pfizer as "valuable research." J.A. 12. Pfizer approved the abstract the next month. In January 2020, Carta presented Alberti's abstract and other research at an international conference.

Even so, Carta gave Alberti an unsatisfactory grade for the Spring 2020 semester. And since this was his second unsatisfactory grade,[2] the school dismissed Alberti from the doctoral program. Alberti appealed the second unsatisfactory grade; however, the school's Graduate Studies Committee denied his appeal and upheld his dismissal from the program.

Alberti then sued the Rector and Visitors of the University of Virginia, alleging four claims: (1) national origin discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2(a)(1); (2) national origin discrimination in violation of Title VI of the Civil Rights Act of 1964 ("Title VI"), 42 U.S.C. § 2000d; (3)

---

[2] He previously received an unsatisfactory grade for the Spring 2019 semester.

retaliation in violation of Title VII, 42 U.S.C. § 2000e-3(a); and (4) retaliation in violation of Title VI, 42 U.S.C. § 2000d; *see Peters v. Jenney*, 327 F.3d 307 (4th Cir. 2003). J.A. 13–16.

After the school moved to dismiss the complaint, the district court granted the motion. Regarding Alberti's Title VII claim, the court declined to decide whether Carta's comments rose to a level sufficient to plausibly allege discrimination. Instead, it held that Alberti failed to allege an adverse employment action related to his work. And the court found that Title VII did not provide a remedy for a school's dismissal of a doctoral candidate from a graduate research assistant position due to grades. The district court also held that the handful of comments Carta allegedly made over several years did not show a nexus to his dismissal from the doctoral program in 2020. Finally, as to the Title VII and Title VI retaliation claims, the court held that Alberti's complaints about Carta's conduct, which took place more than a year before Alberti's first unsatisfactory grade, were not causally connected to his dismissal from the doctoral program.

This appeal followed.[3]

---

[3] We have jurisdiction under 28 U.S.C. § 1291. We review de novo a district court's dismissal of claims under Federal Rule of Civil Procedure 12(b)(6). *Kensington Volunteer Fire Dep't v. Montgomery Cnty.*, 684 F.3d 462, 467 (4th Cir. 2012). All factual allegations in the complaint are accepted as true and all reasonable inferences are taken in favor of the nonmoving party. *Id.* But "[f]actual allegations must be enough to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

II.

On appeal, Alberti first argues the district court incorrectly held that Title VII did not provide a remedy for the school's decision to dismiss him as a doctoral candidate and a graduate research assistant due to unsatisfactory grades. He claims that since the dismissal from the doctoral program resulted in the termination of his research assistant position, his Title VII claim is proper and that he plausibly pled the requirements to establish a prima facia case. But we need not decide that issue today. Even assuming, without deciding, that Title VII could provide a remedy for the school's termination of Alberti's research assistant position, his claim still fails because the allegations about Carta's disparaging comments do not sufficiently plead discrimination based on national origin.

Title VII prohibits employers from "discharg[ing]" or "discriminat[ing] against" an employee "with respect to his compensation, terms, conditions, or privileges of employment, because of [his] . . . national origin." 42 U.S.C. § 2000e-2(a)(1). To establish intentional discrimination, a plaintiff must show "that the defendant had a discriminatory intent or motive for taking a job-related action." *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009) (internal quotation marks omitted). Alberti seeks to do this with direct evidence, by way of Carta's derogatory statements.

As we recently held, derogatory comments can constitute direct evidence of discrimination if they are "(1) related to the protected class of persons of which the plaintiff is a member; (2) proximate in time to the complained-of adverse employment decision; (3) made by an individual with authority over the employment decision at issue; and (4) related

6

to the employment decision at issue." *Bandy v. City of Salem*, 59 F.4th 705, 711 (4th Cir. 2023). But Carta's comments about the Swiss fail at the second requirement. None of Carta's alleged statements were made proximate in time to the school's decision to terminate Alberti from his research assistant position. Most of the alleged comments took place in 2016, several years before any of Alberti's unsatisfactory grades. And the October 2018 comments[4] were made more than six months before Alberti's first bad grade and more than 18 months before his second. *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001) (holding that the temporal proximity requirement to establish a prima facie case "between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence" must be "very close") (cleaned up). As the district court noted, Carta's comments were spaced out over a four-year period, were largely isolated and not made contemporaneously with Alberti's unsatisfactory grades or his dismissal.

---

[4] Aside from their lack of temporal proximity to his bad grades, we question whether comments about bad salads or vegetables, predispositions to kidney stones and hunting and defending their country are even the sort that give rise to Title VII liability. The Supreme Court and this court have consistently held that Title VII should not be interpreted as a "general civility code for the American workplace." *See, e.g.*, *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998); *see also Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (distinguishing "significant" harms from "ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing"); *E.E.O.C. v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315–16 (4th Cir. 2008) ("[R]ude treatment by [coworkers], callous behavior by [one's] superiors, or a routine difference of opinion and personality conflict with [one's] supervisor, are not actionable under Title VII." (internal quotation marks and citations omitted)).

Thus, Alberti's allegations about Carta's comments and criticisms, even accepted as true, do not meet the requirements of our circuit's test for determining whether derogatory comments constitute direct evidence of intentional discrimination. *See Bandy*, 59 F.4th at 711.[5] So, we affirm the district court's dismissal of his Title VII claim based on national origin discrimination. And because the standard for a Title VI national origin discrimination claim based on disparaging comments is the same as that under Title VII, we affirm the court's dismissal of Alberti's Title VI national origin discrimination claim. *See, e.g.*, *Jane v. Bowman Gray Sch. of Med.-N. Carolina Baptist Hosp.*, 211 F. Supp. 2d 678, 690 n.21 (M.D.N.C. 2002) (collecting cases).

## III.

Alberti also challenges the district court's dismissal of his Title VII and Title VI retaliation claims. The anti-retaliation portion of Title VII prohibits employers from "discriminat[ing] against" an employee for "oppos[ing] any practice" made unlawful by

---

[5] Alberti also alleges that the district court failed to consider the disparaging comments as circumstantial evidence of discrimination. Opening Br. 9. To be sure, without direct evidence, a plaintiff may establish discrimination under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). But under that framework, Alberti's allegations must plausibly plead that (1) he is a member in a protected class, (2) was discharged from employment, (3) otherwise fulfilled legitimate employment expectations at the time of his discharge and (4) the action was under circumstances that raise a reasonable inference of unlawful discrimination. *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616 n.8 (4th Cir. 2020). And even assuming, without deciding, Alberti's allegations satisfy the first three factors, they fail at the fourth. For the reasons already stated, Alberti has not alleged facts that plausibly raise a reasonable inference that Carta gave him his second unsatisfactory academic grade and, as a result, he was terminated from his research assistance position because he was from Switzerland.

the title or for the employee making "a charge, testif[ying], assist[ing], or participat[ing] in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e-3(a). To establish a Title VII retaliation claim, a plaintiff must demonstrate that the employer's actions would be considered "materially adverse to a reasonable employee[,]" such that it would "dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington*, 548 U.S. at 57. Further, the claim must demonstrate a causal connection or nexus between the employee's protected action and the employer's retaliatory employment decision. *See Clark Cnty. Sch. Dist.*, 532 U.S. at 272–73.[6] To establish a nexus, a plaintiff can either show a temporal proximity between the protected activity and adverse action, or that other relevant evidence indicates "continuing retaliatory conduct and animus" toward the plaintiff. *Lettieri v. Equant Inc.*, 478 F.3d 640, 650 (4th Cir. 2007).

Here, the district court held that Alberti failed to establish a temporal proximity between his reports to the school's Office for Equal Opportunity and his dismissal from the program after receiving his unsatisfactory grades. The court noted that Alberti reported the alleged disparaging comments to the school in July 2018. It then explained that Carta did not award the first unsatisfactory grade until the Spring of 2019 and Alberti was not ultimately dismissed from the program until summer 2020.

Alberti does not challenge that holding. Instead, citing our decision in *Lettieri*, he argues the district court failed to consider whether "other relevant evidence" alleged in the

---

[6] A Title VI anti-retaliation claim requires the same elements, with the exception that no employment relationship is required. *Peters*, 327 F.3d at 320.

9

complaint could "be used to establish causation." *See Lettieri*, 478 F.3d at 650. Alberti claims that Carta's continued disparaging comments sufficiently allege the necessary retaliatory motive and animus to establish a claim for retaliation.

We disagree. In *Lettieri*, we held that evidence of numerous instances of abuse from a plaintiff's direct supervisor that coincided with her loss of responsibilities and ultimately her loss of employment overcame a seven-month gap between her last discrimination report and her termination. *Id.* at 643–46, 650–51. But even accepting the facts in Alberti's complaint and all reasonable inferences from them as true, the handful of comments Carta made about Alberti's national origin were spread out over more than four years. And the comments made after Alberti reported Carta were neither numerous nor continuous. In fact, they took place—accepting his allegations as true—not contemporaneous with any adverse changes in his research assistant position, but months before. Thus, we affirm the district court's order finding that Alberti's complaints about Carta to the school were not causally connected to his dismissal from the doctoral program.

IV.

For the foregoing reasons, the district court's dismissal of Alberti's complaint is

*AFFIRMED.*