**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 24-1128**

NIA LUCAS; A.M., II, a minor, by and though his Guardian ad Litem, Nia Lucas,

Plaintiffs – Appellants,

v.

VHC HEALTH, d/b/a Virginia Hospital Center; VHC PHYSICIAN GROUP, LLC,
d/b/a VHC Health Physician/OBGYN,

Defendants – Appellees.

------------------------------

UNITED STATES OF AMERICA,

Amicus Curiae.

Appeal from the United States District Court for the Eastern District of Virginia, at
Alexandria. Patricia Tolliver Giles, District Judge. (1:22-cv-00987-PTG-JFA)

Argued:  October 31, 2024                        Decided:  February 5, 2025

Before AGEE, QUATTLEBAUM, and RUSHING, Circuit Judges.

Affirmed in part and reversed and remanded in part by published opinion. Judge
Quattlebaum wrote the opinion, in which Judge Agee and Judge Rushing joined.

**ARGUED:** Brian Wolfman, GEORGETOWN LAW APPELLATE COURTS IMMERSION CLINIC, Washington, D.C., for Appellant. Paul Thomas Walkinshaw, WHARTON, LEVIN, EHRMANTRAUT & KLEIN, P.A., Fairfax, Virginia, for Appellees. Jessica Merry Samuels, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Amicus United States of America. **ON BRIEF:** Natasha R. Khan, Regina Wang, Hasala Ariyaratne, Student Counsel, Ender McDuff, Student Counsel, Claire Shennan, Student Counsel, GEORGETOWN LAW APPELLATE COURTS IMMERSION CLINIC, Washington, D.C., for Appellants. M. Logan Blake, Kathleen S. Ryland, WHARTON LEVIN, Fairfax, Virginia, for Appellees. Kristen Clarke, Assistant Attorney General, Nicolas Y. Riley, Appellate Section, Civil Rights Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Samuel R. Bagenstos, General Counsel, Marc S. Allen, Deputy Associate General Counsel, Cary Lacheen, UNITED STATES DEPARTMENT OF HEALTH & HUMAN SERVICES, Washington, D.C., for Amicus United States of America.

2

QUATTLEBAUM, Circuit Judge:

In this appeal, we decide whether Nia Lucas adequately pled discrimination and retaliation claims against Virginia Health Corporation ("VHC") under the Affordable Care Act ("ACA"). As described below, Lucas has not alleged any facts permitting an inference that she was denied treatment because of her disabilities. Thus, she failed to plead facts that, if true, would show disability discrimination. As for her race discrimination claim, however, Lucas alleged that a VHC doctor told her she did not treat "Blacks" and that she was not treated for her medical complaints. J.A. 20. Lucas also alleged that despite complaining about this racial discrimination to higher-ups at VHC, no one remedied her lack of treatment. These allegations, if true, would plausibly state a claim for racial discrimination. Further, because the ACA incorporates grounds for discrimination from other statutes that ban retaliation, we hold that it too permits retaliation claims, and that Lucas' retaliation claim was adequately pled. So, we affirm in part and reverse and remand in part the district court's order dismissing her claims.

## I. Background

### A. Facts

Nia Lucas, an African American woman, suffers from military service-related disabilities, including PTSD, depression, anxiety, panic attacks and a traumatic brain injury.[1] On August 24, 2018, Lucas and her partner, Alexander Miller, saw Dr. Nisha

---

[1] We accept the facts taken from Lucas' complaint as true in our review of this motion to dismiss.

3

Vayas at VHC for care related to her pregnancy. Dr. Vayas sent Lucas to VHC's Emergency Labor and Delivery Unit to address her pre-term contractions and abdominal and back pain. But the Labor and Delivery Unit staff did not treat her contractions or her pain. Dr. Vayas had prescribed Indocin to stop the contractions, but the Labor and Delivery Unit doctors who saw Lucas did not provide it. Instead, they prescribed Ambien, a medication used to treat insomnia.

The next day, Lucas was discharged. Lucas already had an appointment to see Dr. Vayas two days later, so VHC doctors told her to follow up with Dr. Vayas then. They also told Lucas that if she was going to miscarry, to do it at home. Over the next two days, Lucas was "sleepless, ravaged with pain, [and] experiencing pre-term contract[ions]." J.A. 7.

When Lucas saw Dr. Vayas two days later, she sent Lucas back to the Labor and Delivery Unit with a recommendation to prescribe her Indocin, and, if not that, then Procardia.[2] Lucas saw new doctors this time, who prescribed Procardia. But they nevertheless "made it clear that they believed that because of her diagnosed emotional conditions [and] ADA disabilities . . . that she was fabricating the seriousness of the contractions and pain." J.A. 18–19.

On an unspecified date, Lucas complained to Dr. Saira Mir (her VHC OBGYN), Dr. Kelly Orzechowski (a VHC physician) and Kelly White (a VHC business manager) that she was being discriminated against. She reported that she was told that if she was to

---

[2] Indocin and Procardia are both used to treat pain.

4

miscarry, she should do so at home; that she was never tested for gestational diabetes as Dr. Vayas recommended; that she had to request a glucose tolerance test; that she was diagnosed with cholestasis by a non-medical doctor without any information on the cause or treatment; and that no one treated her pre-term contractions and pain.[3] Lucas also reported that she witnessed an African American VHC medical provider "traumatizing" a Muslim patient who did not speak English. J.A. 9. Apparently, the patient was afraid of the needle used for a blood test, but VHC did not provide an interpreter to explain the situation to her.

Lucas reported additional incidents to VHC, but it's unclear when they occurred. She complained to VHC that "there was this belief that because I was African American, I could not feel pain as another White women [sic] and thus require no treatment for pain on discharge." J.A. 8. She also told VHC that at some point, unidentified VHC physicians told Lucas the "pain was not really [sic] and was only in her head." J.A. 8. Finally, Lucas told them that her "stomach could be scene [sic] gathering into hard balls over fibroids and the fetus, and Ms. Lucas could be hear [sic] crying out in pain." J.A. 9. When Lucas made this last complaint, she emphasized to VHC officials that she wanted to remain at VHC because she feared the maternal mortality rates at other hospitals in the Washington, D.C. area.

At some point after Lucas complained to VHC staff, "[a]round August or September 2018," both Dr. Mir and Dr. Orzechowski included information in their medical notes that

---

[3] Lucas also reported that she was given cortisone cream. Although her briefing does not address this issue, this allegation seems to suggests that she wanted more robust pain treatment.

5

Lucas' claims were false, although she doesn't explain how. J.A. 19. Then, on September 5, Lucas received a letter dated August 31. It stated that because there was "no trust" between Lucas and VHC, the hospital was terminating her care. J.A. 19. Nevertheless, on September 6, Lucas and Miller went to a previously scheduled appointment with Dr. Mir. Once Lucas arrived, she was "told to go" because her expectations could not be met. J.A. 20. Miller recorded the interaction because previously, on an unidentified date, Dr. Mir had told Lucas that she "does not take care of veterans or 'Blacks.'" J.A. 20.

In November of 2018, Lucas gave birth to her son three weeks early. They had to be separated at birth because of Lucas' high blood pressure, for which she was transferred to Walter Reed Hospital. The emotional stress of VHC's actions left her unable to breastfeed, and she continues to suffer physically and mentally.

**B. Procedural History**

On August 29, 2022, Lucas sued VHC pro se.[4] The complaint alleges three counts: "Disability Discrimination under Section 504 of the Rehabilitation Act"; "Disability Discrimination under Title III of the ADA"; and "Violation of the Patient Protection and Affordable Care Act." J.A. 21, 22 & 24. The district court interpreted the complaint as alleging violations of those statutes based on VHC's discrimination against her because of her disabilities and her race. The district court also found that Lucas alleged an ACA retaliation claim.

---

[4] Lucas alleges VHC Physician Group is "'part and parcel of Virginia Hospital Center.'" J.A. 64. We refer to both entities simply as "VHC." VHC does not dispute this characterization and uses the same consolidated acronym.

6

VHC moved to dismiss. Lucas opposed the motion but withdrew all claims under the Rehabilitation Act, Title VI and the ADA.[5] As a result, the district court construed her discrimination claims as arising under the ACA, leaving her with a racial discrimination claim, a disability discrimination claim and a retaliation claim, all under the ACA. The court held a hearing on VHC's motion on June 15, 2023, at which Lucas appeared pro se.

After the hearing, the district court granted VHC's motion to dismiss all claims. In determining that Lucas did not state a race discrimination claim, the court viewed many of Lucas' allegations as conclusory, undeserving of the credence normally due at the Rule 12(b)(6) stage. According to the district court, this left only Dr. Mir's undated statement that she "does not take care of . . . 'Blacks.'" J.A. 20. The court found this allegation insufficient to plausibly plead race discrimination because it was a single, isolated event. The court further concluded that because Lucas repeatedly characterized her dismissal from VHC as retaliatory rather than discriminatory, Lucas had not stated a racial discrimination claim based on her termination.

Lucas' disability discrimination claim fared no better. The court explained that the ACA incorporates the Rehabilitation Act, which requires that disability be the sole reason for the discriminatory conduct. It then concluded that the reason VHC's letter gave for terminating Lucas as a patient—lack of trust—precluded such a finding. The court held that her retaliation claims failed because it was "unaware of any case law that supports an

---

[5] It is not clear that Lucas pled any Title VI claims to withdraw. According to Lucas, all her claims "should have been referred under [Count] III, Violation of the ADA." J.A. 90. But because she withdrew her ADA claims, and Count III laid out violations of the ACA, the court interpreted Lucas' complaint as bringing all her claims under the ACA.

7

independent cause of action under Section 1557 of the ACA for retaliation." J.A. 95. The court also reasoned that the Rehabilitation Act's limitation to employees, which was incorporated by the ACA, blocked Lucas' retaliation claims since she was not an employee of VHC.[6]

Lucas moved to alter or amend the judgment dismissing her claims, which the district court denied. Lucas filed a timely notice of appeal, over which we have jurisdiction under 28 U.S.C. § 1291.

## II. Analysis

Lucas appeals the dismissal of her three claims, all of which she brings under § 1557 of the ACA. That provision declares:

> an individual shall not, on the ground prohibited under title VI of the Civil Rights Act of 1964, title IX of the Education Amendments of 1972, the Age Discrimination Act of 1975, or section 794 of title 29 [the Rehabilitation Act], be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance[.]

42 U.S.C. § 18116(a) (cleaned up). Thus, rather than crafting independent grounds, § 1557 incorporates grounds from other listed statutes. The identified grounds are "race, color, national origin" under 42 U.S.C. § 2000d (Title VI); "sex" under 20 U.S.C. § 1681(a) (Title IX); "age" under 42 U.S.C. § 6101 (Age Discrimination Act of 1975); and "disability" under 29 U.S.C. § 794(a) (Rehabilitation Act), as defined in 42 U.S.C. § 12102 (Americans

---

[6] Before dismissing all of Lucas' claims with prejudice, the court also denied as futile Lucas' motion to amend her complaint.

8

with Disabilities Act). To remedy a § 1557 violation, the "enforcement mechanisms provided for and available under such title VI, title IX, [the Rehabilitation Act], or such Age Discrimination Act shall apply." 42 U.S.C. § 18116(a). Lucas contends she plausibly pled claims for disability discrimination, race discrimination and retaliation under the ACA. We address each argument in turn.[7]

**A. ACA Disability Discrimination**

Section 1557 of the ACA prohibits excluding someone from health programs based on the "ground prohibited under" the Rehabilitation Act. 42 U.S.C. § 18116(a). Section 504 of the Rehabilitation Act, in turn, provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance[.]" 29 U.S.C. § 794(a). Because the Rehabilitation Act forms the grounds of Lucas' disability discrimination claim, its framework controls. *See Basta v. Novant Health Inc.*, 56 F.4th 307, 314 (4th Cir. 2022) ("For disability-discrimination claims, the ACA incorporates the substantive analytical framework of the [Rehabilitation Act]." (quoting *Francois v. Our Lady of the Lake Hosp., Inc.*, 8 F.4th 370, 378 (5th Cir. 2021))).

---

[7] We review appeals of motions to dismiss for failure to state a claim de novo. *Benjamin v. Sparks*, 986 F.3d 332, 351 (4th Cir. 2021). We "must assume the truth of the material facts as alleged in the complaint," *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 171 (2005) (citation omitted), and "draw all reasonable inferences in favor of the plaintiff." *E.I. du Pont de Nemours and Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citation and quotation marks omitted). Additionally, we construe a pro se complaint like Lucas' liberally. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

9

In order to establish a violation of the Rehabilitation Act, a plaintiff must demonstrate that she is: "(1) a 'disabled individual' as defined in the [Rehabilitation Act]; (2) 'otherwise qualified' to participate in the offered activity or to enjoy its benefits; (3) excluded from such participation or enjoyment solely by reason of his or her handicap; and (4) that the program administering the activity receives federal financial assistance." *Basta*, 56 F.4th at 315.[8]

VHC disputes only the third element on appeal—that Lucas was excluded because of her disabilities. These disabilities include "Traumatic Brain Injury, Post-Traumatic Stress Syndrome, Depression, Anxiety and Panic Attacks," J.A. 18, all of which "substantially limit[]" her major life activities. J.A. 21. Lucas argues she was excluded both by the failure to treat her contractions and by her eventual termination as a VHC patient. But Lucas has not alleged facts to support either theory.

As to VHC's failure to treat, Lucas alleged that because of her PTSD, depression, panic attacks and anxiety, VHC asserted that her pain was not real and was only in her head. VHC argues this allegation's omission of the speaker's identity dooms Lucas' claim.

---

[8] Our cases that involve disability discrimination generally arise in the employment context. But that doesn't mean relief outside of the employment context is unavailable. Nothing in the Rehabilitation Act itself limits retaliation claims to the employment context and no court we are aware of has limited these claims to adverse actions against employees. In fact, other circuits have permitted Rehabilitation Act claims outside of the employment context to proceed. *See, e.g.*, *D.B. ex rel. Elizabeth B. v. Esposito*, 675 F.3d 26, 41 (1st Cir. 2012); *Mershon v. St. Louis Univ.*, 442 F.3d 1069, 1074 & n. 3 (8th Cir. 2006); *Reed v. Columbia St. Mary's Hosp.*, 782 F.3d 331, 337 (7th Cir. 2015); *Burgess v. Harris Beach PLLC*, 346 F. App'x 658, 660 (2d Cir. 2009). We agree and join our sister circuits in holding that Rehabilitation Act claims are not limited to the employment context.

But VHC offers no supporting authority. Lucas alleges that she was told this at the VHC Labor and Delivery Unit, with at least two physicians present. So, under Rule 12(b)(6), we must accept as true that someone at VHC told Lucas that her pain was not real and was only in her head, even though we do not know who. Even so, we need not credit that VHC doctors told Lucas this *because* of her disabilities. Lucas does not allege that anyone said that part. Nor does she allege any facts from which it could be inferred. Instead, Lucas mixes her impressions with what others said to her.

We are not obligated to credit Lucas' speculations as to why someone said something to her. *See E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship,* 213 F.3d 175, 180 (4th Cir. 2000) ("While we must take the facts in the light most favorable to the plaintiff, we need not accept the legal conclusions drawn from the facts . . . unwarranted inferences, unreasonable conclusions, or arguments."). Following that principle, Lucas' only non-speculative factual allegation is that someone told her that her pain was not real and was only in her head. Absent more, this does not render her disability discrimination claim plausible. Recall that the Rehabilitation Act requires a plaintiff to show she was "excluded from such participation or enjoyment solely by reason of his or her handicap." *Basta*, 56 F.4th at 315. Even if VHC doctors told Lucas her pain was not real, nothing in her allegations indicates that the reason they did not treat her contractions or pain had anything to do with her disabilities. Thus, this theory of exclusion fails.

VHC's termination of Lucas as a patient does not satisfy the Rehabilitation Act, either. Lucas alleges no facts stating or even suggesting her termination had any connection to her disabilities. As the district court correctly noted, Lucas herself insists that she was

11

terminated in retaliation for complaints about earlier discrimination, not her disability. *See* J.A. 9 ("[A]fter her complaint, the Defendant's retaliation, dismissing her"); *id*. (alleging a "retaliatory dismissal after [Lucas'] complaint of the intentional disability discrimination"); J.A. 10 ("VHC and its physician group retaliated against [] Lucas because [of] her complaint of intentional discrimination against her and another patient of color"); J.A. 24 ("The Plaintiff[] alleges that the Defendant's intentional discriminat[ion] [was] based on [Lucas'] complaint of intentional discrimination retaliated [sic] in dismissing her"). Without alleging facts connecting her disabilities to her termination, her termination cannot serve as a ground for her disability discrimination claim. Because Lucas' failure-to-treat theory and her termination theory both fail, we affirm the district court's dismissal of her disability discrimination claim.[9]

## B. ACA Racial Discrimination

Section 1557 of the ACA also forbids excluding someone from health programs based on the "ground prohibited under" Title VI. 42 U.S.C. § 18116(a). Title VI, in turn, prohibits discrimination on the ground of race, color, or national origin "under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. Importantly, the discrimination must be intentional. *Alexander v. Sandoval*, 532 U.S. 275, 280 (2001).

---

[9] Lucas argues the district court improperly considered VHC's explanation for terminating Lucas when evaluating this claim. We need not address that argument, since the insufficiency of Lucas' factual allegations logically precedes other considerations. We may "affirm on any ground appearing in the record, including theories not relied upon or rejected by the district court." *Scott v. United States,* 328 F.3d 132, 137 (4th Cir. 2003). Also, VHC makes a separate argument that doctors must engage in "benign" discrimination every day, tailoring treatment based upon patient symptoms and history. Resp. VHC Br. at 19–22. Because of Lucas' pleading deficiencies, we need not reach this argument.

12

"To survive a motion to dismiss under Title VI, a plaintiff must plead sufficient facts supporting (1) the defendant is a recipient of federal financial assistance; and (2) the defendant intentionally discriminated against plaintiff on the basis of race, color, or national origin." *Evans v. 7520 Surratts Rd. Operations, LLC*, No. 8:21-CV-01637-PX, 2021 WL 5326463, at *3 (D. Md. Nov. 16, 2021); *see also Baker v. Bd. of Regents of State of Kan.,* 991 F.2d 628, 631 (10th Cir. 1993*)* ("The two elements for establishing a cause of action pursuant to Title VI are (1) that there is racial . . . discrimination and (2) the entity engaging in discrimination is receiving federal financial assistance." (cleaned up)). There is no dispute that VHC receives federal funds. So, the only question is whether Lucas plausibly pled that VHC intentionally discriminated against her because of her race.

Lucas alleged that Dr. Mir told her that she "does not take care of veterans or 'Blacks.'" J.A. 20. But that statement, no matter how abhorrent, does not necessarily mean that VHC intentionally discriminated on the basis of race. The parties agree that for VHC to be liable for Dr. Mir's conduct, Lucas must plausibly plead that VHC acted with deliberate indifference to the intentional discrimination of its agents. While we have yet to address this issue in the context of a Title VI failure to provide medical treatment claim, that appears right. *See Koon v. North Carolina*, 50 F.4th 398, 400 (4th Cir. 2022) (in the ADA context, "intentional discrimination . . . at least requires deliberate indifference"); *see also Ricketts v. Wake Cnty. Pub. Sch. Sys.*, No. 22-1814, 2025 WL 37342, at *7–8 (4th Cir. Jan. 7, 2025) (published) (applying deliberate indifference to both Title VI and Title IX claims); *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 272 (3d Cir. 2014) (adopting

13

"deliberate indifference as a form of intentional discrimination . . . in the Title VI context").

"Deliberate indifference requires a 'deliberate or conscious choice' to ignore something." *Koon*, 50 F.4th at 405 (quoting *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)). We have said in the Title IX context, "[a]n institution can be held liable [for deliberate indifference] only if an official who has authority to address the alleged discrimination and to institute corrective measures has actual knowledge of discrimination . . . . and fails adequately to respond." *Jennings v. Univ. of N.C.*, 482 F.3d 686, 700 (4th Cir. 2007) (en banc) (cleaned up) (quoting *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998)). "So deliberate indifference here requires that [Lucas plausibly allege facts] that some [VHC] official with the authority to address [her] problem both had knowledge of [her] federally protected rights and nonetheless failed to help [her]." *Koon*, 50 F.4th at 407.

Claiming she meets that standard, Lucas alleges not only that Dr. Mir said she did not treat "Blacks" (J.A. 20); Lucas also alleges that she complained to White, Dr. Mir and Dr. Orzechowski that she had not received treatment for her pain or contractions and that she had been treated differently than patients who were not African American. According to the complaint, Mir and Orzechowski were physicians, and White was VHC's business manager. While it is not reasonable to infer that every doctor at VHC has authority to remedy alleged discrimination, Lucas alleged she complained to two doctors along with a manager in the business department of VHC. Keeping in mind that we are at the 12(b)(6) stage of the case, it is reasonable to infer that at least the manager had authority to remedy

14

the situation. *See Carlton & Harris Chiropractic, Inc. v. PDR Network, LLC*, 80 F.4th 466, 472 (4th Cir. 2023) ("[A]t this stage of the litigation, we assume as true the complaint's factual allegations and we construe all reasonable inferences in favor of the plaintiff . . . ." (cleaned up)). Lucas also alleges that not only did none of these VHC representatives remedy the discrimination by ensuring she was treated; VHC subsequently terminated her as a patient. Whether Lucas can prove these allegations of course remains to be seen. However, at the Rule 12(b)(6) stage of the case, these allegations plausibly plead that there was a violation and that VHC knew about it but failed to take corrective action. *See Koon*, 50 F.4th at 405. Accordingly, Lucas has stated a claim for racial discrimination. Thus, we reverse the district court's dismissal of this claim.

## C. ACA Retaliation

Section 1557 does not mention retaliation. Does that mean it does not provide a cause of action for alleged retaliatory conduct? We have not yet addressed this question. Neither has the Supreme Court nor any of our sister circuits. Lucas' appeal requires us to confront it.

We begin with the text of § 1557. Section 1557 prohibits "discrimination," "exclu[sion]," and "den[ial of] benefits" "on the ground prohibited under" the listed anti-discrimination statutes. In other words, it does not have its own anti-discrimination language; instead, it incorporates the grounds of discrimination covered in Title VI, Title IX, the Age Discrimination Act and the Rehabilitation Act. So, do those statutes ban retaliation?

15

None do expressly. But the Supreme Court has ruled that the general anti-discrimination language in one of those statutes—Title IX—implicitly bans retaliation. In *Jackson v. Birmingham Board of Education*, the Court considered Title IX's declaration that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance[.]" 20 U.S.C. § 1681(a). In holding that such language included retaliation claims, the Court explained that "[r]etaliation against a person because that person has complained of sex discrimination is another form of intentional sex discrimination encompassed by Title IX's private cause of action." 544 U.S. 167, 173 (2005); *see id.* at 176 (citing *Sullivan v. Little Hunting Park, Inc.*, 396 U.S. 229 (1969), in which the Court held that 42 U.S.C. § 1982's general prohibition against discrimination included a prohibition against retaliation). Continuing, the Court reasoned that retaliation is "a form of 'discrimination' because the complainant is being subjected to differential treatment," and "retaliation is discrimination 'on the basis of sex' because it is an intentional response to the nature of the complaint[.]" *Id.* at 174.

The Court has not had the occasion to consider whether Title VI, the Age Discrimination Act or the Rehabilitation Act include retaliation claims. But the Supreme Court has applied *Jackson*'s logic to two other anti-discrimination statutes not incorporated into § 1557. *See CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 446, 453 (2008) (race discrimination under § 1981); *Gomez-Perez v. Potter*, 553 U.S. 474, 481, 484–85 (2008) (Age Discrimination in Employment Act). This trilogy of cases establishes "the general

16

proposition that Congress' enactment of a broadly phrased antidiscrimination statute may signal a concomitant intent to ban retaliation[.]" *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 355 (2013). Because the statutes incorporated into § 1557 are all broadly phrased antidiscrimination statutes similar to Title IX, there is good reason to think this general proposition applies to them, too. In fact, in line with *Jackson*, *CBOCS* and *Gomez*, we have held that Title VI and the Rehabilitation Act implicitly ban retaliation. *See Peters v. Jenney*, 327 F.3d 307, 319 (4th Cir. 2003) (holding Title VI prohibits retaliation despite its lack of an explicit retaliation provision); *S.B. ex rel. A.L. v. Bd. of Educ. of Harford Cnty.*, 819 F.3d 69, 78 (4th Cir. 2016) (permitting Rehabilitation Act retaliation claims).[10]

But there is a catch. If a statute contains both a general anti-discrimination provision that does not address retaliation and also an express anti-retaliation provision, retaliation claims are governed by that express retaliation provision—including any limitations in it—rather than the general anti-discrimination provision. *See Nassar*, 570 U.S. at 357 (suggesting that "when Congress elected to address retaliation . . . in clear textual terms" with "an express antiretaliation provision," that provision controls retaliation claims); Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 183 (2012) ("If there is a conflict between a general provision and a specific provision, the specific provision prevails (*generalia specialibus non derogant*).").

---

[10] We have not had the occasion to address this issue with respect to the Age Discrimination Act. But since Lucas alleges retaliation based on her protected conduct with respect to race and disability, we need not decide here whether it implies a retaliation claim.

17

The ACA contains an express anti-retaliation provision. Section 1558, the very next section of the public law after § 1557, amends the Fair Labor Standards Act of 1938 to state:

(a) PROHIBITION.—No employer shall discharge or in any manner discriminate against any employee with respect to his or her compensation, terms, conditions, or other privileges of employment because the employee (or an individual acting at the request of the employee) has—
. . .
(2) provided, caused to be provided . . . to the employer, the Federal Government, or the attorney general of a State information relating to any violation of, or any act or omission the employee reasonably believes to be a violation of, any provision of this title (or an amendment made by this title).

29 U.S.C. § 218c. While the government, as amicus, insists § 1558 is only a whistle-blower provision, it also covers retaliation claims. Because the information provided under § 1558 can pertain to the reporting employee herself, filing a claim for violations of the FLSA falls within this provision. That "is the very definition of retaliation." *Mys v. Mich. Dep't of State Police*, 886 F.3d 591, 602 (6th Cir. 2018). Regardless of what else it does, § 1558 prohibits retaliation. So, does that mean, under *Nassar*, any ACA retaliation claim must be brought under § 1558 and is subject to the limitations of that provision?

No. True, the ACA, similar to the language in Title VII that *Nassar* interpreted, contains a separate express retaliation provision. But § 1557—the ACA's general discrimination provision—is different than Title VII's general discrimination provision. Here's why. Although § 1557 doesn't mention retaliation by name, it incorporates all the grounds of discrimination covered by the listed statutes. Congress could have identified the characteristics it wanted to protect like it normally does in anti-discrimination statutes — indeed, as it did in Title VII—by explicitly articulating race, age, sex and disability. If it

18

had, *Nassar* would compel the dismissal of Lucas' retaliation claim since § 1558 applies only to employees. But Congress didn't do that. Instead, it incorporated the grounds of discrimination banned by Title VI, the Age Discrimination Act, Title IX and the Rehabilitation Act—which, except for the Age Discrimination Act, the Supreme Court and our court have interpreted to include retaliation.[11]

To be clear, we are not holding that the ACA implies a retaliation claim. To the contrary, we hold that Congress' drafting choice expressly incorporates all types of discrimination covered by the statutes listed in § 1557. And both statutes that Lucas relies on—Title VI and the Rehabilitation Act—have been interpreted to prohibit retaliation. As a result, *Nassar*'s rule that the existence of an express retaliation provision in a statute means retaliation claims under that statute must be brought under and be subject to any limitations of the express retaliation provision, does not apply to the ACA.

To sum up, *Jackson* teaches that discrimination generally includes retaliation. But *Nassar* explains that when the statutory context includes a specific retaliation ban, the general discrimination ban will not be read to also include retaliation. While § 1558 supplies an explicit ban in this case, we do not apply *Nassar*'s exception because when Congress incorporated the grounds of discrimination from Title IX, Title VI, the Rehabilitation Act and the Age Discrimination Act of 1975, it also incorporated the legal

---

[11] An interesting question of statutory construction might arise if the cases interpreting general discrimination provisions to include bans of retaliation were decided after the ACA's enactment. But here, the cases concluding that general bans of discrimination also prohibit retaliation pre-date the ACA.

19

interpretations of those grounds of discrimination. Those interpretations have made clear that discrimination implies retaliation.

Having determined that the ACA permits retaliation claims, we must next decide whether Lucas has plausibly pled one. Most of our retaliation decisions arise from the employment context. As a result, our precedent uses employment language to describe the elements of a retaliation claim. *See Peters*, 327 F.3d at 320 (listing the elements of Title VI retaliation); *see Hooven-Lewis v. Caldera*, 249 F.3d 259, 272 (4th Cir. 2001) (listing the same elements for Rehabilitation Act retaliation claims). Shed of that language, to state a claim for retaliation based on race under Title VI or based on disability under the Rehabilitation Act, Lucas must show (1) that she engaged in protected activity; (2) that VHC took a material adverse action against her related to a health program or a health activity and (3) that a causal connection existed between the protected activity and the adverse action. For the causal connection, a plaintiff may rely on "a temporal proximity between the protected activity and adverse action." *Alberti v. Rector & Visitors of the Univ. of Va.*, 65 F.4th 151, 156 (4th Cir. 2023). "The closer the temporal proximity between the protected activity and the adverse [] action, the stronger the inference of a causal connection becomes." *Greatwide Dedicated Transp. II, LLC v. United States Dep't of Labor*, 72 F.4th 544, 557 (4th Cir. 2023).

Turning to Lucas' retaliation allegations, she alleges that around August 28, 2018, she reported her concerns of race and disability discrimination to three high-level VHC employees: Dr. Saira Mir, Dr. Kelly Orzechowski and Kelly White. Three days later, VHC sent Lucas a letter terminating her as a patient. Three days is well within the timeframe to

20

create some inference of a connection between the protected activity and the adverse action. *See Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 253 (4th Cir. 2015) (holding that a month-long delay between the protected activity and adverse action created a jury question regarding causation). At least at the Rule 12(b)(6) stage of the case, Lucas has plausibly alleged the elements of a retaliation claim.

### III. Conclusion

In conclusion, we affirm the district court's dismissal of Lucas' disability discrimination claim. But we reverse the district court's dismissal of Lucas' racial discrimination claim and her retaliation claim. Accordingly, we remand to the district court for proceedings consistent with this opinion.[12]

*AFFIRMED IN PART AND REVERSED AND*
*REMANDED IN PART*

---

[12] Lucas also appeals the district court's denial of her motion to amend her complaint. We dismiss that challenge as moot as to her racial discrimination claim and her retaliation claim. But we deny that challenge regarding her disability claim and affirm the district court's determination that Lucas' amended complaint would be futile. As explained in Section II.A, Lucas' only allegation relating to disability discrimination was that VHC made a statement that her pain was not real and only in her head. Lucas' amended complaint does not include that allegation or any other relevant allegations, so we affirm the district court's futility determination, finding no abuse of discretion. *U.S. ex re. Ahumada v. NISH*, 756 F.3d 268, 274 (4th Cir. 2014).